**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SAM DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CORRECTIONS OFFICERS GEORGE GAGE, GREGORY GILL, and JOHN DOES 1-12,**<br><br>**Defendants.** | **Civil Action No.:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE ACTION

1. Plaintiff Sam Doe brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988, to redress violations of his well-established civil rights under the Eighth, First and Fourteenth Amendments to the U.S. Constitution for tortious injuries which Defendants intentionally and maliciously inflicted upon him.

## JURISDICTION, VENUE, AND JURY DEMAND

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Eighth, First and Fourteenth Amendments to the United States Constitution, and the common law of the Commonwealth of Pennsylvania. This Court's original jurisdiction over Plaintiff's federal claims is established by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because this action seeks redress for the violation of, *inter alia*, federal constitutional and civil rights.

3. This Court's supplemental jurisdiction over Plaintiff's state common law claims and causes of action stated herein is established by 28 U.S.C. § 1367 because those claims derive from the same nucleus of operative facts as the federal claims stated herein, and are part of the same case or controversy that gives rise to those federal claims and causes of action.

4. Venue is proper in the United States District Court for the Western District of Pennsylvania, pursuant to 28 U.S.C. §§ 1391(a), (b), and (c), and § 1402(b), because the events and conduct giving rise to the claims stated herein occurred in this District.

5. Plaintiff demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

6. At all times relevant to this Complaint, Plaintiff Sam Doe was an inmate in the custody of the Pennsylvania Department of Corrections at State Correctional Institution Pine Grove State Prison ("SCI Pine Grove") in Indiana County, Pennsylvania. Plaintiff is currently an inmate in custody of the Pennsylvania Department of Corrections at SCI Houtzdale State Prison in Clearfield County, Pennsylvania.

7. As a victim of sexual abuse, and as the details and circumstances are set forth in this Complaint, Plaintiff has sought leave to proceed anonymously by motion filed contemporaneously herewith. Plaintiff does not intend to proceed with this action publicly because doing so would create and present a grave threat to his life and physical safety.

8. Defendant Corrections Officer George Gage was at all times relevant to this Complaint employed by the Pennsylvania Department of Corrections and was working at SCI Pine Grove.

9. Defendant Corrections Officer Gregory Gill was at all times relevant to this Complaint employed by the Pennsylvania Department of Corrections and was working at SCI Pine Grove.

10. Defendant Corrections Officers JOHN DOE Nos. 1-12 were at all times relevant to this Complaint employed by the Pennsylvania Department of Corrections and was working at

SCI Pine Grove.

**SPECIFIC ALLEGATIONS OF FACT**

11. Plaintiff was transferred to SCI Pine Grove in or around the first week of March of 2023.

12. When Plaintiff entered SCI Pine Grove, the cells used to house newly arrived prisoners (hereinafter "Intake Unit") were located in the Restricted Housing Unit.

13. When Plaintiff entered SCI Pine Grove, he was housed in the Intake Unit.

14. The Restricted Housing Unit (hereinafter "RHU") is the housing unit that is known by the general public in the Commonwealth of Pennsylvania as "solitary confinement."

15. At the time Plaintiff entered SPG, inmates housed in the RHU, including those housed on the Intake Block, were not allowed all of the same privileges as were prisoners housed among the prison's general population.

16. Because he was denied the same privileges allowed prisoners housed among the prison's general population while housed in the Intake Unit, due to no fault of his own, Plaintiff filed a Grievance pursuant to SPG's grievance procedures.

17. Defendant Gage was assigned to work in the RHU intermittently while Plaintiff was housed in the Intake Unit, but Plaintiff had no interaction with Defendant at that time.

18. Plaintiff was transferred from the Intake Block to HB Block. HB Block houses General Population. While housed on HB Block, Plaintiff met an inmate named Dominic, whose last name was either Knight or McKnight (hereinafter "McKnight").

19. While housed on HB Block, Plaintiff, Plaintiff assisted Knight in filing a grievance concerning the actions of Defendant Gage.

20. Specifically, Plaintiff assisted McKnight in preparing a grievance alleging that

Defendant Gage encouraged McKnight to hang himself in response to McKnight's appeals for medical care and psychological consultation.

21. Plaintiff had no interaction with Defendant Gage before he assisted McKnight in filing the grievance related to Gage's conduct.

22. After Plaintiff assisted McKnight with his grievance, Defendant Gage immediately stated to other inmates and guards that Plaintiff was a homosexual, a pedophile, and a snitch, and that Defendant causes problems by filing grievances.

23. At or about the end of May 2024, Plaintiff was transferred out of SPG for court proceedings. Plaintiff was subsequently gone from SPG for more than 90 days.

24. On October 1, 2024, Plaintiff was transferred back to SPG.

25. Upon his transfer back to SPG, Plaintiff was housed on the Intake Block because he had been gone from SPG for more than 90 days.

26. When Plaintiff was transferred back to SPG and housed on the Intake Block, Defendant Gage was working on the Intake Block.

27. On October 2, 2024, Plaintiff was approached by an inmate named Isaiah Strickland.

28. On October 2, 2024, Isaiah Strickland approached Plaintiff and told him that Defendant Gage was publicizing among the prison population that Plaintiff was a pedophile, jailhouse snitch, and a homosexual, that inmates should ostracize and stay away from him, and that he should not be trusted.

29. Strickland additionally told Plaintiff that Defendant Gage was, that same day, publicizing among the prison population that Plaintiff was working as an informant for the Bureau of Investigations and Intelligence, SPG Prison Security (hereinafter "BII"), and that

Plaintiff's cooperation with BII was the cause of several arrests of in-house drug dealers and the termination or disturbance of prison drug dealing operations.

30. For much of October 2, 2024, Plaintiff had been back at SPG for less than 24 hours.

31. Upon information and belief, Isaiah Strickland's statements on October 2, 2024, are a true and accurate account of the sum and substance of Defendant Gage's statements to him that day.

32. Upon information and belief, Defendant Gage's statements on October 2, 2024, were intended to put Plaintiff in great danger of retaliation by other inmates, and in great physical danger.

33. Defendant Gage's statements on October 2, 2024, did in fact put Plaintiff in great danger of retaliation by other inmates, and in great physical danger.

34. On October 2, 2024, Plaintiff began to receive written messages (handwritten notes referred to as "kites") from other inmates demanding money and sexual favors.

35. On October 3, 2024, Plaintiff received a kite from a high-ranking member of the Stone Bloods Gang in SPG with a street name of "Shmurder." The note repeated the rumors spread by Defendant Gage that Plaintiff was a pedophile and was working with BII and contained an extortion demand stating that Plaintiff must pay $1,500. The note threatened Plaintiff's physical safety if he failed to pay within a week.

36. On October 3, 2024, Plaintiff approached Defendant Gage, who was stationed in a central security center known as "the Bubble." The Bubble oversees the entire Intake Block. Officers stationed in the Bubble lock and unlocked cell doors electronically while seated a desk in the Bubble.

37. The Bubble is normally monitored by video or other camera surveillance at all times, such that all persons inside the Bubble are recorded at all times.

38. Upon information and belief, C.O. John Doe Defendants 1-3 were also present in either the Bubble or the Intake Block at the time Plaintiff approached Defendant Gage on October 3, 2024.

39. Upon information and belief, one or more of C.O. John Doe Defendants 1-3 were aware that Defendant Gage had made statements on October 2, 2024, that were intended to and that did put Plaintiff in great danger of retaliation by other inmates, and in great physical danger.

40. Plaintiff stated to Defendant Gage that he did not feel safe in light of the false rumors Gage was spreading among the prison population.

41. Plaintiff also requested that Defendant Gage contact the head of security so that Plaintiff could have an opportunity to document and address Gage's spreading of false rumors without filing a grievance.

42. Defendant Gage responded to Plaintiff: "Get your gay ass away from me. Get your gay ass away from my desk."

43. Upon information and belief, at least one or more C.O. John Doe Defendants 1-3 heard the exchange between Plaintiff and Defendant Gage on October 3, 2024.

44. The following day, October 4, 2024, Plaintiff again approached Defendant Gage while Defendant was stationed in the Bubble at approximately 9:00 am. Plaintiff approached Defendant Gage for the second time on October 4, 2024, at or about 12:30pm while Defendant was stationed in the Bubble.

45. Upon information and belief, at least one or more of C.O. John Doe Defendants 4-6 was also present in either the Bubble or the Intake Block at the time Plaintiff approached

Defendant Gage on October 4, 2024.

46. On October 4, Plaintiff again told Defendant Gage that he felt endangered and unsafe while comingling with inmates housed in General Population. Plaintiff stated that he had received multiple handwritten kites from multiple people referring to the false rumors about him which Defendant Gage was spreading, who demanded money or sexual favors, and who threatened his life.

47. As a result of the threats made in the note, Plaintiff told Defendant Gage that he was afraid to leave the Intake Block and was afraid to go to the Pill Line for his prescribed mental health medications.

48. Plaintiff also requested that he be placed in protective custody. Defendant Gage laughed at Plaintiff in response.

49. Plaintiff again asked to be permitted to speak to the head of security. Defendant Gage replied, in sum and substance and to the best of Plaintiff's exact recollection, that if Plaintiff "bother[ed him] again security will be least of [his] worries."

50. Defendant Gage then said to Plaintiff, in sum and substance and to the best of Plaintiff's exact recollection, that he would "have my boys take care of you."

51. Upon information and belief, at least one or more of C.O. John Doe Defendants 4-6 heard the exchange between Plaintiff and Defendant Gage on October 4, 2024.

52. On or about October 12, 2024, Plaintiff submitted Form DC-135A. He requested that SPG preserve the video camera footage from three specific time spans containing recordings of his interactions with Defendant Gage at the Bubble, specifically on October 3, 2024, from 9:00am to 10:30am, and on October 4, 2024, from 9:15am to 10:45am, and 1:00pm to 1:45pm.

53. On October 21, 2024, SPG Staff Member Leslie Bradley signed and dated the

Form and completed the "Response" section with the note: "The videos were saved per your request."

54. Later that day inmates Isaiah Strickland and Jhajuan Rousseau approached Plaintiff on the housing unit. They reported to him that earlier that day Defendant Gage asked them to take part in an assault on Plaintiff and offered them contraband of their choice to participate in the assault, that Plaintiff was the reason Prison security was breaking up in-house drug distribution operations and busting in-house dealers, and that Plaintiff's filing of grievances against Corrections Officers made his job harder.

55. Upon information and belief, Strickland's, and Rousseau's statements on October 4, 2024, are a true and accurate account of the sum and substance of Defendant Gage's statements to them made that day.

56. Later that day, Defendant Gage approached Plaintiff's cell and stated to Plaintiff's cellmate that Plaintiff had been transferred to SPG from SCI Laurel Highland because he attempted to rape his cellmate. Defendant Gage also stated to Plaintiff's cellmate that Plaintiff was a "snitch."

57. On October 5, 2024, prisoners on the Intake Block were allowed to go to the Yard.

58. Plaintiff did not go because he was afraid to leave the cell block as a result of the multiple extortion threats and threats on his life he had received over the prior two days.

59. Two of the prisoners who returned from the Yard gave Plaintiff "kites" from inmates who were housed on two separate cell blocks.

60. The "kites" given to Plaintiff were from high-ranking members of gangs operating inside SPG, specifically the Bloods and Rolling 60s Crips gangs and were in fact

extortion demands.

61. Criminal gangs with widespread geographic presence are known to operate inside prisons throughout the United States and do in fact operate within Pennsylvania Department of Corrections facilities, and within SPG.

62. Both of the high-ranking gang members operating inside SPG stated to Plaintiff in their extortion demands that they knew him to be a pedophile and a snitch. Each demanded payment of $1,500, to be made within one week. Each threatened that if Plaintiff did not arrange the payments he would not be safe in SPG.

63. In the evening of October 5, 2024, Plaintiff's cellmate also threatened him. Plaintiff's cellmate stated to Plaintiff that he had been told Plaintiff was a rapist, and that if Plaintiff came near him he would "mess him up badly."

64. On October 6, 2024, at approximately 12:00pm, Defendant Gage was again on duty in the Bubble.

65. Upon information and belief, at least one or more of C.O. John Doe Defendants 7-9 were also present in either the Bubble or the Intake Block at approximately 12:00pm on October 4, 2024, and were aware that Defendant Gage had spread rumors among the prison population that Plaintiff was a homosexual, a snitch, and was working with BII.

66. Inmates who are not housed in the Intake Unit are generally prohibited from being present in the Intake Unit, do not have independent access to the Intake Unit, and have no way to access the Intake Unit without a guard's permission and cooperation.

67. The only way an inmate who was not housed in the Intake Unit or the RHU could enter the Intake Unit, where Plaintiff was housed, was through the physical act and agency of a Corrections Officer in arranging such access.

68. At approximately 12:10 pm, Defendant Gage buzzed opened the door of Plaintiff's cell remotely from the Bubble.

69. Immediately after the cell door buzzed open, an inmate with the street name "Goldmouth" entered Plaintiff's cell, while a second inmate with a street name "PY" stood just outside the doorway of the cell, blocking a camera that pointed directly into Plaintiff's cell.

70. Neither Goldmouth nor PY were housed in the Intake Unit, where Plaintiff was housed on October 6, 2024.

71. None of C.O. John Doe Defendants 7-9 attempted to stop or prevent Defendant Gage from opening the door of Plaintiff's cell at approximately 12:00pm on October 4, 2024.

72. No C.O. John Doe Defendant attempted to stop or prevent "Goldmouth" from entering Plaintiff's cell.

73. Goldmouth is a high-ranking gang member operating inside SPG and had sent one of the extortion notes to Plaintiff the prior day.

74. When the door buzzed open and Plaintiff saw inmates not from his housing unit, he was briefly confused, and said "What's up man?"

75. Goldmouth, who had entered the cell, pulled out a long knife he had concealed in his clothing. He stated to Plaintiff: "Get the fuck on your knees before I stab you. Get the fuck on your knees."

76. Plaintiff's cellmate, who was seated, put his headphones on and turned to face the wall, away from Plaintiff.

77. Goldmouth stated to Plaintiff, in sum and substance and to the best of Plaintiff's exact recollection, "Yeah, I know you're a fucking faggot. George [Gage] told me that you got kicked out of your last jail for trying to rape your celli."

78. Goldmouth removed his penis from his pants and stated to Plaintiff: “You know what to do,” as a demand that Plaintiff perform oral sex on him.

79. Plaintiff was afraid for his life and believed that if he did not comply he would be stabbed and he would die. Plaintiff did therefore comply with Goldmouth’s demand. Goldmouth forced Plaintiff at knifepoint to continue until he had ejaculated in Plaintiff’s mouth.

80. Goldmouth then left Plaintiff’s cell. Plaintiff was in shock and attempted to gather himself. He washed his face and his mouth at the sink in his cell.

81. Within a few minutes, Defendant Gage approached Plaintiff’s cell and said, “You learned your lesson yet, nigger?” Defendant Gage then walked away smiling.

82. Approximately one hour later, Plaintiff was allowed to go to the Pod Yard between cell blocks BB and BC.

83. While he was outside in the Pod Yard, Plaintiff was observed and summoned by Defendant Gage.

84. Defendant Gage stated to Plaintiff in sum and substance, “I don't want you to report what happened earlier or my involvement in it.”

85. Defendant Gage stated to Plaintiff in sum and substance, “If you’re willing to keep the secret, you know, I’ll bring you some stuff in and you basically got the green light to you know use all the drugs or sell all the drugs you want on my shift.”

86. Defendant Gage stated to Plaintiff in sum and substance and to the best of Plaintiff’s exact recollection, “the cherry on top is I will let you get some time in the cell with the transgender nigger that wears lipstick.”

87. Defendant Gage stated to Plaintiff in sum and substance and to the best of Plaintiff’s exact recollection, “I’m not gonna let you make this report. I'm not gonna lose my job

to some bullshit."

88. Defendant Gage stated to Plaintiff in sum and substance and to the best of Plaintiff's exact recollection, "If you go forward with this report, you know, you better watch out for your family and your little girl that you got in Harrisburg."

89. At approximately 6:00 pm later that day, inmates housed in the Intake Block were again permitted to go out to the Yard with inmates from other Units. Plaintiff remained in his cell. Plaintiff's cell was on the first floor, and the window faced the Yard.

90. Goldmouth knocked on Plaintiff's cell window and told him to come out to the Yard. Plaintiff saw PY and about six others standing with and around Goldmouth.

91. Plaintiff was afraid to refuse and complied.

92. When Plaintiff entered the Yard, Goldmouth approached him aggressively, jabbed his finger into Plaintiff's face and said, in sum and substance, "you better not make that fucking report."

93. Goldmouth stated to Plaintiff, in sum and substance and to the best of Plaintiff's exact recollection, "you better not say shit. If security comes over here and they search anybody's cell on my block, I'm gonna fucking stab you, I'm gonna fucking kill you, I'm gonna send you out of here on a life flight."

94. Plaintiff said "alright," and returned to his cell.

95. Plaintiff finally entered protective custody later on October 6, 2024. He was housed in a cell by himself.

96. Defendant Corrections Officer Gregory Gill was working in the RHU when Plaintiff entered protective custody.

97. While in protective custody, Plaintiff requested to file a complaint with SPG's

PREA Compliance Manager concerning the attack he had endured which had been procured, ordered, and orchestrated by Defendant Gage.

98. On or about October 8 or 9, 2024, Defendant exercised his right to file a complaint under PREA, pursuant to DOC Policy Number DC-ADM-008, concerning the attack he had endured which had been procured, ordered, and orchestrated by Defendant Gage.

99. As part of SPG's PREA reporting protocol, Defendant was interviewed by non-party Corrections Officer Lieutenant Willis.

100. Lieutenant Willis discouraged and verbally attempted to convince Plaintiff not to go forward with the PREA reporting process. Lt. Willis told Plaintiff: "Every action comes with a reaction;" and: "Goldmouth is a big deal."

101. Lieutenant Willis restrained Plaintiff tightly with a waist shackle and handcuffs so that Plaintiff found it difficult to write the PREA complaint. Lieutenant Willis refused Plaintiff's request to adjust the shackles and restraints so that Plaintiff could more effectively write the PREA complaint.

102. Within a few days, Defendant Gill began to tell other inmates on the pod that Plaintiff had filed a complaint under PREA procedures against Defendant Gage because of the attack on him.

103. Within a few days, Defendant Gill began to tell other inmates on the pod that Plaintiff had been raped by mouth and that Plaintiff is a snitch.

104. Upon information and belief, one or more of C.O. John Doe Defendants 10-12 was working on the pod at the time that Defendant Gill told inmates that Plaintiff had filed a complaint under PREA procedures against Defendant Gage because of the attack on him, that Plaintiff had been raped by mouth, and that Plaintiff is a snitch.

105. Upon information and belief, one or more of C.O. John Doe Defendants 10-12 were aware that Defendant Gill told inmates that Plaintiff had filed a complaint under PREA procedures against Defendant Gage because of the attack on him, that Plaintiff had been raped by mouth, and that Plaintiff is a snitch.

106. Shortly after filing the PREA complaint, Plaintiff was charged with possession of an illegal controlled substance, which was allegedly found in incoming legal mail addressed to Plaintiff.

107. The incoming legal mail which allegedly contained a dangerous control substance was never delivered to Plaintiff. Plaintiff is unaware of any of his past or present attorneys attempting to send him illegally controlled substances in prison mail, or otherwise.

108. A hearing was conducted concerning the possession of a dangerous control substance charge. The hearing officer dismissed the charge.

109. Shortly after filing the PREA, Corrections Officers defaced a photo of Plaintiff's ten-year-old daughter by drawing swastikas and a penis on her mouth.

110. Shortly after filing the PREA, Corrections Officers wrote the word "faggot" on Plaintiff's Covid face mask.

111. On or about November 4, 2024, while Plaintiff was in protective custody for protection against Goldmouth and other gang members, an inmate named Chandler was placed into Plaintiff's cell. Chandler was a low-ranking gang member or "foot soldier" for Goldmouth.

112. Upon information and belief, Defendant Gill and one or more of C.O. John Doe Defendants 10-12 were aware that Chandler was a low-ranking gang member or "foot soldier" for Goldmouth and were also aware that Plaintiff was placed in the RHU after being raped by Goldmouth.

113. Because Chandler was in the RHU for an assault, placing him in the same cell as Plaintiff, who was in protective custody, was against DOC regulations and/or SPG procedures.

114. Upon information and belief, Defendant Gill and each of C.O. John Doe Defendants 10-12 working in the RHU at the time were aware that Chandler was in the RHU as punishment for an assault he had committed against another inmate.

115. Chandler stole Plaintiff's food and mattress, forced Plaintiff to wash his clothes, and threatened to beat him if he did not comply. Chandler was housed with Plaintiff for several days.

116. On November 17, 2024, two days after his thirty-first birthday, Plaintiff was improperly placed in a cell with a Youthful Offender.

117. Youthful Offenders are young adult inmates convicted of crimes committed as juveniles. Pennsylvania DOC rules and regulations mandate that Youthful Offenders are not to be housed with older adult inmates.

118. Defendant Gill stated to Plaintiff's Youthful Offender cellmate that he had been housed with Plaintiff because Plaintiff likes to have access to young men for sex.

119. Defendant Gill's statements were malicious, untrue, and intended only to cause antagonism and conflict between Plaintiff and his cellmate.

120. On November 25, 2024, while Plaintiff was showering, Defendant Gill entered his cell, confiscated 1) legal papers Plaintiff had prepared regarding his PREA complaint, and 2) statements which other inmates had prepared regarding Defendant Gage's attempts to recruit them to harm Plaintiff.

121. When Plaintiff was returned to his cell after showering he discovered that his legal papers had been seized. Plaintiff confronted Defendant Gill concerning the missing legal

papers.

122. Defendant Gill stated to Plaintiff in sum and substance and to the best of Plaintiff's exact recollection, "you fucked George so now I'm fucking you," and referred to Plaintiff's filing of grievances, including pursuant to PREA, against Defendant Gage.

123. Later in the day on November 25, 2024, Defendant Gill approached Plaintiff's cell and demanded that Plaintiff and the Youthful Offender cellmate perform a sexual act for his gratification.

124. Defendant Gill threatened Plaintiff and the Youthful Offender cellmate, telling them that if they did not comply, he would withhold food, and ensure that privileges including access to the commissary and ability to make phone calls would be stopped.

125. In the face of these threats, Plaintiff and the Youthful Offender cellmate both exposed themselves and touched each other in the groin area.

126. Defendant Gill demanded that the Youthful Offender cellmate get on all fours and that Plaintiff penetrate him. Plaintiff and the Youthful Offender cellmate refused. Defendant Gill repeated his threat that food and privileges would be withheld and then walked away from the cell.

127. Upon information and belief, one or more of C.O. John Doe Defendants 10-12 witnessed and/or heard Defendant Gill coerce both Plaintiff and the Youthful Offender cellmate to expose themselves and touch each other in the groin area and witnessed and/or heard Defendant Gill demand that the Youthful Offender cellmate get on all fours and that Plaintiff penetrate him.

128. None of C.O. John Doe Defendants 10-12 attempted to prevent Defendant Gill from coercing both Plaintiff and the Youthful Offender cellmate to expose themselves and touch

each other in the groin area or from demanding that the Youthful Offender cellmate get on all fours and that Plaintiff penetrate him.

129. From November 25 to November 27, 2024, both Plaintiff and the Youthful Offender cellmate told numerous C.O. John Doe Defendants that they each wanted to file a complaint regarding Defendant Gill's sexual harassment of them pursuant to SPG's PREA protocol.

130. Plaintiff wrote to the Warden and the chief of BII at SPG, and to the DOC Chief Counsel, regarding his having been illegally and improperly being housed with a Youthful Offender, and regarding Defendant Gill's sexual harassment against himself and the Youthful Offender.

131. Plaintiff was not afforded the opportunity to file a complaint regarding Defendant Gill's sexual harassment pursuant to SPG's PREA protocol.

132. Plaintiff was not permitted to file a complaint regarding Defendant Gill's sexual harassment pursuant to SPG's PREA protocol.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### STATE-CREATED DANGER
**(42 U.S.C. § 1983 and 14th Amendment, U.S. Const.)**
**(Against Defendant Gage, In His Individual Capacity)**

133. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

134. While acting under color of State law and using the powers and authority of a Corrections Officer of the Commonwealth of Pennsylvania, Defendant Gage engaged in conduct which constituted a violation of rights that were clearly established under the Substantive Due

Process Clause of the Fourteenth Amendment to the Constitution of the United States.

135. Defendant Gage used the powers and authority of a Corrections Officer of the Commonwealth of Pennsylvania to commit each, and all of the acts and conduct described and complained of herein, and those acts were possible only due to the authority which he exercised under color of law.

136. The rape that Plaintiff suffered and the physical injuries and emotional injuries he sustained on October 6, 2024, were a foreseeable and direct result of Defendant Gage's recruitment of inmates to carry out that attack.

137. The rape that Plaintiff suffered and the physical injuries and emotional injuries he sustained on October 6, 2024, were a foreseeable and direct result of Defendant Gage allowing Goldmouth and PY access to the RHU in violation of prison regulations.

138. The rape that Plaintiff suffered and the physical injuries and emotional injuries he sustained on October 6, 2024, were a foreseeable and direct result of Defendant Gage unlocking Plaintiff's cell door in violation of prison regulations.

139. Defendant Corrections Officer Gage (i) intentionally recruited prisoners to attack Plaintiff sexually; (ii) used his authority and actual power and control exercised over the Intake Block to allow those prisoners access to the Intake Block, in violation of prison regulations, and (iii) used his authority and actual power and control over Plaintiff, exercised from inside the Bubble, to enable those prisoners access to Plaintiff so that they could rape Plaintiff. Such conduct demonstrates a degree of culpability that shocks the conscience.

140. As an inmate under the control of Defendant Corrections Officer Gage, Plaintiff was a peculiarly foreseeable victim and was a deliberately intended victim of Defendant Gage's discrete, grossly reckless, and malicious acts of: (i) recruiting prisoners to attack on Plaintiff, (ii)

causing inmates to be in the Intake Block against prison regulations for the purpose of attacking Plaintiff, and (ii) unlocking Plaintiff's cell door to enable the attack.

141. As a direct and foreseeable result of the danger affirmatively created by Defendant Gage, Plaintiff endured catastrophic physical and psychological harm, including but not limited to oral rape, extreme and ongoing emotional distress, and lasting psychological injury. Plaintiff continues to suffer from exacerbated post-traumatic stress disorder, including constant terror of being subjected to further sexual assault with the orchestrated involvement of correctional staff, persistent hypervigilance, debilitating panic attacks, night terrors, chronic insomnia, and pervasive feelings of fear and helplessness. Plaintiff also experiences profound loss of self-confidence, deep shame, worthlessness, and a painful sense of self-betrayal. The trauma has fundamentally disrupted Plaintiff's ability to function, eroded all sense of personal safety, and caused a complete breakdown in Plaintiff's ability to trust correctional staff or authority figures. These injuries have inflicted enduring and deeply personal emotional pain and have resulted in long-term psychological consequences that require continuing and intensive mental health treatment. Plaintiff's suffering is ongoing, severe, and emblematic of the irreparable harm caused when those entrusted with custodial authority abuse their power to inflict targeted violence and psychological terror.

## SECOND CAUSE OF ACTION

## FAILURE TO PROTECT

**(42 U.S.C. § 1983 and 8th Amendment, U.S. Const.)**

**(Against C.O. John Doe Defendants, In Their Individual Capacities)**

142. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

143. While acting under color of State law and using the powers and authority of a

Corrections Officer of the Commonwealth of Pennsylvania at SPG, Defendant Gage engaged in conduct which constituted a violation of rights that were clearly established under the Eighth Amendment to the Constitution of the United States.

144. Defendant Corrections Officers Gage and John Does 1-12 used the powers and authority of a Corrections Officer to commit each and all of the acts and conduct described and complained of herein, and those acts were possible only due to the authority which they exercised under color of law.

145. Because Defendant Gage publicized among the inmate population that Plaintiff was a homosexual, a pedophile, and a snitch, and further claimed that Plaintiff was an informant for the Bureau of Investigations and Intelligence (SPG Prison Security) [hereinafter "BII"], and that Plaintiff's cooperation with BII led to multiple arrests of in-house drug dealers and the disruption or termination of prison drug trafficking operations, Defendant Gage caused Plaintiff to be incarcerated under conditions that posed a substantial risk of serious physical harm. Defendant Gage knew that, as a result of these disclosures, Plaintiff would face a significant risk of harm at the hands of other inmates.

146. By recruiting prisoners "Goldmouth" and "PY" to assault Plaintiff, Defendant Gage knowingly exposed Plaintiff to incarceration under conditions posing a substantial risk of serious physical harm. Defendant Gage was fully aware that Plaintiff faced a significant and specific risk of violence at the hands of other inmates as a direct result of his actions, yet he deliberately disregarded that risk.

147. Defendant Gage acted with deliberate indifference to the risk of serious harm when he allowed prisoners Goldmouth and PY access to the Intake Block in violation of prison regulations.

148. Defendant Gage acted with deliberate indifference to the risk of serious harm when he unlocked Plaintiff's cell door to enable prisoners Goldmouth and PY access to Plaintiff.

149. Plaintiff was raped as a direct result of Defendant Gage's deliberate and intentional indifference to the substantial risk of danger to Plaintiff which Defendant's actions created.

150. Each of Defendant John Does 1-9 they had actual knowledge that Defendant Gage had spread rumors that Plaintiff was a homosexual, a pedophile, and a snitch, and that Plaintiff worked as an informant for the Bureau of Investigations and Intelligence, (SPG Prison Security [hereinafter "BII"]), and that Plaintiff's cooperation with BII was the cause of several arrests of in-house drug dealers and the termination or disturbance of prison drug dealing operations. As a result, each of the John Doe Defendants 1–9 knew that Plaintiff was exposed to a substantial and specific risk of serious physical harm from other inmates and consciously disregarded that risk.

151. Each of John Doe Defendants 1-6 were aware of Plaintiff's request to be placed in protective custody, despite their knowledge of the substantial risk of violent harm he faced from other prisoners and ignored that request.

152. John Doe Defendants 1-6 acted with deliberate indifference to the risk of serious violent harm Plaintiff faced when they ignored his request to be placed in protective custody.

153. Plaintiff was raped as a direct result of John Doe Defendants 1-6 deliberate indifference to the substantial risk of violent danger Plaintiff faced.

154. Because they had actual knowledge that Defendant Gage was allowing unauthorized prisoners to enter Plaintiff's cell, John Doe Defendants 7-9 acted with deliberate indifference to the risk of serious violent harm they knew Plaintiff faced when they failed to take any action to prevent Goldmouth and PY from entering Plaintiff's cell.

155. One or more of John Doe Defendants 10-12 witnessed and/or heard Defendant Gill coerce both Plaintiff and the Youthful Offender cellmate to expose themselves and touch each other in the groin area and witnessed and/or heard Defendant Gill demand that the Youthful Offender cellmate get on all fours and that Plaintiff penetrate him.

156. None of John Doe Defendants 10-12 took any steps to prevent Defendant Gill from sexually harassing Plaintiff.

157. John Doe Defendants 10-12 acted with deliberate indifference to the risk of serious physical harm Plaintiff faced when they failed to take any steps to prevent Defendant Gill from sexually harassing Plaintiff.

158. As a foreseeable and direct result of the deliberate indifference and failure to protect Plaintiff by John Doe Defendants 1–9, Plaintiff suffered severe and lasting harm, including rape and profound emotional and psychological injury. Plaintiff continues to experience exacerbated post-traumatic stress disorder symptoms, including constant terror of being raped again with the orchestrated involvement of correctional staff, persistent paranoia, overwhelming fear, feelings of helplessness, debilitating panic attacks, night terrors, chronic insomnia, and a complete loss of trust, confidence, and sense of safety in relation to correctional staff. Plaintiff also suffers from a deep sense of shame, worthlessness, and emotional self-betrayal. These injuries have inflicted enduring psychological trauma, severely interfered with Plaintiff's daily functioning, and necessitate ongoing and intensive mental health treatment.

159. As a foreseeable and direct result of the deliberate indifference and failure to protect Plaintiff by John Doe Defendants 10–12, Plaintiff suffered grave physical and emotional injuries, including sexual assault and severe psychological trauma. Plaintiff continues to experience symptoms of exacerbated post-traumatic stress disorder, including constant terror of

being raped again with the orchestrated involvement of correctional staff, persistent paranoia, overwhelming fear, feelings of helplessness, debilitating panic attacks, chronic insomnia, and night terrors. Plaintiff also suffers from a profound loss of self-confidence, deep shame, worthlessness, and a distressing sense of self-betrayal. These injuries have caused lasting emotional pain, fundamentally disrupted Plaintiff's psychological stability, and resulted in the need for continued and intensive therapeutic care. Plaintiff's trauma is enduring, deeply personal, and the direct result of being knowingly exposed to a substantial risk of serious harm by those responsible for his safety.

**THIRD CAUSE OF ACTION**
**FIRST AMENDMENT RETALIATION**
**(42 U.S.C. § 1983 and 8th Amendment, U.S. Const.)**
**(Against Defendants Gage and Gill, In Their Individual Capacities)**

160. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

161. While acting under color of State law and using the powers and authority of a Corrections Officer of the Commonwealth of Pennsylvania at SPG, Defendants Gage and Gill engaged in conduct which constituted a violation of rights that were clearly established under the First Amendment to the Constitution of the United States.

162. Defendants Gage and Gill used the powers and authority of a Corrections Officer to commit each, and all of the acts and conduct described and complained of herein, and those acts were possible only due to the authority which they exercised under color of law.

163. Plaintiff engaged in constitutionally protected conduct by filing, when he was initially transferred to SPG, a grievance concerning the conditions on the Intake Block, located in the RHU.

164. Plaintiff engaged in constitutionally protected conduct by requesting on October 4 and October 5, 2024, that he be placed in protective custody.

165. Plaintiff engaged in constitutionally protected conduct by filing a complaint under the Prison Rape Elimination Act, pursuant to Pennsylvania DOC Policy Number DC-ADM-008, concerning the sexual attack perpetrated against him.

166. Plaintiff's (a) exercise of his First Amendment right to request protective custody on October 4 and 5, 2024 and (b) filing of a grievance pursuant to DOC policy concerning the conditions on the Intake Block in the RHU shortly after his transfer to SPG, were both substantial motivating factors in each of Defendant Gage's decisions to (i) recruit prisoners to attack Plaintiff, (ii) cause inmates to be in the Intake Block against prison regulations for the purpose of attacking Plaintiff, (iii) unlock Plaintiff's cell door to enable the attack on him, (iv) spread false information among the inmate population that Plaintiff was a pedophile, a homosexual, and an informant. For example, and among other specific facts pleaded above, Defendant Gage specifically threatened Plaintiff on October 5, 2024, that if Plaintiff "bothered [him] again" with a request for protective custody, he would "have [my] boys take care of [you]."

167. Any and all of the actions taken by Defendant Gage and enumerated in Paragraph 166(i)-(iv) are sufficiently severe to deter a prisoner of ordinary firmness from filing a grievance.

168. None of the actions taken by Defendant Gage and enumerated in Paragraph 166(i)-(iv) had any valid penological purpose.

169. Plaintiff's (a) exercise of his First Amendment right to file a complaint with SPG's Prison Rape Elimination Act ("PREA") Compliance Manager concerning the attack he had endured and which had been procured, ordered and orchestrated by Defendant Gage, was a

substantial motivating factor in each of Defendant Gill's decisions to: (i) confiscate and destroy legal papers, (ii) cause Plaintiff to be housed in a cell with a Youthful Offender, in violation of DOC regulations (iii) threaten Plaintiff with withholding of food and of commissary and telephone access if he refused to display sexual behavior with his cellmate. For example, and among other specific facts pleaded above, Defendant Gill specifically stated to Plaintiff that he had confiscated Plaintiff's legal papers due to Plaintiff filing a PREA grievance concerning the attack perpetrated by Defendant Gage.

170. Any and all of the actions taken by Defendant Gill and enumerated in Paragraph 169(i)-(iii) are sufficiently severe to deter a prisoner of ordinary firmness from filing a grievance.

171. None of the actions taken by Defendant Gill and enumerated in Paragraph 169(i)-(iii) had any valid penological purpose.

172. As a foreseeable and direct result of Defendant Gage's retaliatory actions, as set forth in Paragraph 166(i)–(iv), Plaintiff suffered grievous harm, including rape and profound emotional and psychological injury. Plaintiff continues to suffer from exacerbated post-traumatic stress disorder symptoms, including constant terror of being raped again with the involvement of correctional staff, persistent paranoia, overwhelming fear, feelings of helplessness, debilitating panic attacks, chronic insomnia, and recurring night terrors. Plaintiff also endures deep shame, emotional self-betrayal, a profound sense of worthlessness, and a complete loss of confidence and safety in relation to correctional staff. These injuries have caused deep and lasting trauma, severely impaired Plaintiff's mental and emotional well-being, and require ongoing psychological care and support. Defendant Gage's retaliatory conduct not only subjected Plaintiff to physical and psychological violence but also stripped Plaintiff of his basic human dignity and security within the custodial environment.

173. As a foreseeable and direct result of Defendant Gill's retaliatory actions, as described in Paragraph 169(i)–(iii), Plaintiff suffered severe and devastating injuries, including rape and profound emotional and psychological harm. Plaintiff continues to experience exacerbated post-traumatic stress disorder symptoms, including constant terror of being raped again with the involvement or complicity of correctional staff, persistent paranoia, overwhelming fear, feelings of helplessness, debilitating panic attacks, chronic insomnia, and night terrors. Plaintiff also suffers from a deep loss of self-confidence, intense shame, a sense of emotional self-betrayal, and an enduring feeling of worthlessness. These injuries have caused lasting trauma, severely disrupted Plaintiff's emotional stability, and necessitate ongoing and intensive mental health treatment. Defendant Gill's retaliatory conduct not only subjected Plaintiff to physical and psychological violence, but also inflicted irreparable harm to Plaintiff's personal security, dignity, and sense of safety within the custodial environment.

## FOURTH CAUSE OF ACTION

## CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS

**(42 U.S.C. § 1983, 1st and 8th Amendments, U.S. Const.)**

**(Against Defendant Gage, In His Individual Capacity)**

174. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

175. While acting under color of State law and using the powers and authority of a Corrections Officer of the Commonwealth of Pennsylvania at SPG, Defendant Gage engaged in conduct which constituted a violation of rights that were clearly established under the First and Eighth Amendments to the Constitution of the United States.

176. Defendant Gage used the powers and authority of a Corrections Officer to commit each, and all of the acts and conduct described and complained of herein, and those acts were

possible only due to the authority which they exercised under color of law.

177. As a prisoner of the Commonwealth of Pennsylvania, Plaintiff had a right to file a grievance concerning conditions on the Intake Block located in the RHU without being subjected by prison officials to adverse actions or retaliation for doing so.

178. As a prisoner of the Commonwealth of Pennsylvania, Plaintiff had a right to request protective custody on October 4 and 5, 2024 without being subjected by prison officials to adverse actions or retaliation for doing so.

179. Defendant Gage conspired with non-parties Goldmouth and PY to retaliate against Plaintiff for having filed a grievance concerning conditions in the Intake Unit and for requesting protective custody on October 4 and 5, 2024. Specifically, Defendant Gage: (i) recruited those inmates to commit a sexual assault on Plaintiff in retaliation for his having filed grievances in the past, (ii) caused those inmates to be on the Intake Block in violation of prison regulations for the specific intended purpose of attacking Plaintiff, and (iii) unlocked Plaintiff's cell door so that those inmates could enter Plaintiff's cell and sexually assault him.

180. As a prisoner in the custody of the Commonwealth of Pennsylvania, Plaintiff possessed a constitutional right to be free from violence inflicted by other inmates as a result of the intentional acts of state actors undertaken without any legitimate penological justification. No correctional official may lawfully expose a prisoner to a known risk of serious harm through actions motivated by malice, retaliation, or personal animus, rather than any valid correctional objective.

181. Defendant Gage conspired with non-parties Goldmouth and PY to subject Plaintiff to violence, at their hands. Specifically, Defendant Gage: (i) recruited those inmates to commit a sexual assault on Plaintiff in retaliation for his having filed grievances in the past, (ii)

caused those inmates to be on the Intake Block in violation of prison regulations for the specific intended purpose of attacking Plaintiff, and (ii) unlocked Plaintiff's cell door so that those inmates could enter Plaintiff's cell and sexually assault him.

182. As a foreseeable and direct result of the conspiracy into which Defendant Gage entered with inmates known as "Goldmouth" and "PY," Plaintiff suffered grave physical and emotional injuries, including rape and severe psychological trauma. Plaintiff continues to experience symptoms of exacerbated post-traumatic stress disorder, including constant terror of being raped again with the assistance or complicity of correctional staff, persistent paranoia, overwhelming fear, helplessness, recurring panic attacks, night terrors, and chronic sleep disruption. Plaintiff also suffers from deep emotional shame, loss of self-confidence, feelings of worthlessness, and a profound sense of self-betrayal. These injuries have inflicted lasting psychological damage, fundamentally undermined Plaintiff's mental and emotional stability, and require ongoing and intensive therapeutic treatment. Defendant Gage's conspiratorial conduct, undertaken without any lawful or penological justification, directly enabled targeted violence against Plaintiff and irreparably harmed his dignity, security, and well-being while in state custody.

## FIFTH CAUSE OF ACTION

## CIVIL CONSPIRACY
**(Pennsylvania Common Law)**
**(Against Defendant Gage, In His Individual Capacity)**

183. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

184. Defendant Gage acted in concert and combination with Goldmouth and PY to rape Plaintiff.

185. Specifically, Defendant Gage (i) recruited those inmates to rape Plaintiff, (ii) caused those inmates to be on the Intake Block in violation of prison regulations, for the specific

intended purpose of attacking and raping Plaintiff, and (ii) unlocked Plaintiff's cell door so that those inmates could enter Plaintiff's cell and attack and rape him.

186. Each of Defendant Gage's specific actions described in Paragraph 185 was unlawful.

187. Each of Defendant Gage's specific actions described in Paragraph 185 was an overt act taken in pursuance of the common purpose of perpetrating an attack and rape against Plaintiff.

188. Each of Defendant Gage's specific actions described in Paragraph 185 was an overt act taken with malice and in an attempt to injure Plaintiff.

189. As a foreseeable and direct result of the civil conspiracy into which Defendant Gage entered with inmates known as "Goldmouth" and "PY," Plaintiff suffered brutal and life-altering harm, including rape and severe emotional and psychological injury. Plaintiff continues to experience exacerbated symptoms of post-traumatic stress disorder, including constant terror of being raped again with the orchestrated involvement of correctional staff, persistent paranoia, overwhelming fear, helplessness, panic attacks, chronic insomnia, night terrors, and a total loss of trust, safety, and confidence in correctional staff. Plaintiff also suffers from intense emotional shame, a deep sense of worthlessness, and emotional self-betrayal. The trauma inflicted through this conspiratorial conduct has caused profound and enduring psychological damage, significantly impairing Plaintiff's emotional stability and necessitating ongoing and intensive mental health treatment. Defendant Gage's agreement and coordination with these inmates, undertaken without any lawful or penological justification, directly facilitated the targeted assault on Plaintiff and violated Plaintiff's fundamental right to bodily integrity and personal security while in state custody.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Pennsylvania Common Law)**
**(Against Defendant Gage)**

190. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

191. Defendant Gage's conduct of (i) recruiting inmates to rape Plaintiff, (ii) causing those inmates to be on the Intake Block in violation of prison regulations for the specific intended purpose of attacking and raping Plaintiff, and (ii) unlocking Plaintiff's cell door so that those inmates could enter Plaintiff's cell and attack and rape him, was extreme and outrageous conduct.

192. Each of Defendant Gage's specific acts enumerated in Paragraph 191 was an intentional act undertaken for sadistic and malicious motives and was not accidental or negligent conduct.

193. Each of Defendant Gage's specific acts enumerated in Paragraph 191 was an intentional act undertaken for sadistic and malicious motives conduct that was prohibited and was not authorized under any circumstances by the Pennsylvania Department of Corrections.

194. As a foreseeable and direct result of Defendant Gage's outrageous, malicious, and sadistic conduct, Plaintiff suffered severe and devastating injuries, including rape and profound emotional and psychological distress. Plaintiff continues to experience symptoms of exacerbated post-traumatic stress disorder, including constant terror of being raped again with the orchestrated involvement of correctional staff, persistent paranoia, overwhelming fear, helplessness, recurring panic attacks, chronic insomnia, and night terrors. Plaintiff also suffers from deep emotional shame, a loss of self-confidence, a sense of emotional self-betrayal, and feelings of worthlessness. Defendant Gage's conduct was so extreme and egregious as to exceed all bounds of decency tolerated in a civilized society, and it caused Plaintiff emotional anguish of

such severity that no reasonable person could be expected to endure it. As a result, Plaintiff has sustained long-term psychological trauma requiring ongoing and intensive therapeutic treatment and support.

**SEVENTH CAUSE OF ACTION**
**SLANDER**
**(Pennsylvania Common Law)**
**(Against Defendant Gage)**

195. The Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

196. Defendant Gage publicized to the inmate population defamatory statements concerning Plaintiff, specifically that Plaintiff: (i) is a pedophile, (ii) is a homosexual, (iii) was transferred to SPG because he attempted to rape his prior cellmate.

197. Each of Defendant Gage's statements was defamatory because, among other reasons, they impute odious sexual conduct.

198. Each of Defendant Gage's statements was false.

199. Within 24 hours of Defendant Gage's publicizing the slanderous falsehoods enumerated in Paragraph 196, Plaintiff received numerous written messages from prisoners referring to Defendant Gage's statements, demanding money or sexual favors, and making threats on his life, on the basis that they understood Plaintiff to be a pedophile and a homosexual.

200. Plaintiff was directly harmed by Defendant Gage's publication of slanderous falsehoods among the inmate population. Specifically, Plaintiff was sexually assaulted by Goldmouth, who stated to him, "Yeah, I know you're a fucking faggot. George [Gage] told me that you got kicked out of your last jail for trying to rape your cellie."

201. As a foreseeable and direct result of Defendant Gage's outrageous, malicious, and

knowingly false statements made to other inmates, including assertions that Plaintiff was a homosexual, a pedophile, a snitch, and an informant for the Bureau of Investigations and Intelligence—Plaintiff suffered grave and foreseeable harm. These slanderous statements destroyed Plaintiff's reputation within the prison population and exposed him to targeted violence, culminating in a sexual assault and resulting in profound emotional and psychological trauma. Plaintiff continues to suffer from exacerbated post-traumatic stress disorder, including constant terror of being raped again with the complicity of correctional staff, persistent paranoia, overwhelming fear, helplessness, debilitating panic attacks, chronic insomnia, and recurring night terrors. Plaintiff also experiences deep emotional shame, feelings of worthlessness, and a complete breakdown in his ability to feel safe or trust correctional staff. Defendant Gage's defamatory conduct not only incited the conditions that directly led to Plaintiff's physical and emotional victimization but also inflicted lasting reputational damage and enduring psychological harm requiring continued therapeutic care.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Sam Doe demands judgment against Defendants on each cause of action in amounts to be determined upon the trial of this action, and inclusive of punitive damages, reasonable attorneys' fees including the costs and disbursements of this action pursuant to 42 U.S.C. §§ 1983 and 1988, interest, and such other relief as is appropriate under the law.

Dated: November 13, 2025.

/s/Leticia C. Chavez-Freed, Esq.
The Chavez-Freed Law Office
PA Bar ID 323615
2600 N. 3rd Street, 2nd FL
Harrisburg, PA. 17110

leticia@chavez-freedlaw.com
Ph: (717) 893-5598
*Counsel for Plaintiff Sam Doe*